IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EXTRACTION OIL & GAS, INC., *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 20-11548 (CSS) |
| Debtors. | : | (Jointly Administered) |
| | | |
| FEDERAL ENERGY REGULATORY COMMISSION, | : : : | |
| | : | Civ. No. 20-1412-CFC |
| Appellant, | : | Civ. No. 20-1506-CFC |
| | : | Civ. No. 20-1564-CFC |
| | : | Civ. No. 21-0012-CFC |
| v. | : | (Consolidated) |
| | : | |
| EXTRACTION OIL & GAS, INC., | : | |
| | : | |
| Appellee. | : | |

Daniel M. Vinnik, Federal Energy Regulatory Commission, Washington, D.C.,

   *Counsel for Appellant*

George W. Hicks, Jr., C. Harker Rhodes IV, Andrew C. Lawrence, KIRKLAND & ELLIS LLP, Washington, D.C.; Anna Rotman, P.C., Jamie Alan Aycock, Kenneth Young, KIRKLAND & ELLIS LLP, Houston, Texas; Marc R. Abrams, Richard W. Riley, Stephen B. Gerald, WHITEFORD, TAYLOR & PRESTON LLC, Wilmington, Delaware,

   *Counsel for Appellee*

## MEMORANDUM OPINION

August 23, 2021
Wilmington, Delaware

_____
CONNOLLY, CHIEF JUDGE

In the normal course, a party's appeal from a bankruptcy court's ruling is heard by the district court. 28 U.S.C. § 158(a). Thus, in general, the party's appeal is entertained by the court of appeals only if the district court affirms the bankruptcy court's ruling and the party appeals the district court's decision. But under 28 U.S.C. § 158(d)(2)(A), the court of appeals has the discretion to exercise jurisdiction over an appeal taken directly from a bankruptcy court's ruling if the district court certifies that at least one of four circumstances exist:

(1) the ruling involves a question of law as to which there is no controlling decision of the court of appeals or of the Supreme Court;

(2) the ruling involves a matter of public importance;

(3) the ruling involves a question of law requiring resolution of conflicting decisions; or

(4) an immediate appeal from the ruling to the court of appeals may materially advance the progress of the case or proceeding in which the appeal is taken.

*See* 28 U.S.C. § 158(d)(2)(A).

Importantly, under § 158(d)(2)(B), the district court *must* make this certification if, either "on its own motion or on the request of a party," it determines that any one of the four circumstances exist. *See* 28 U.S.C. § 158(d)(2)(B) ("If . . . the district court . . . on its own motion or on the request of a party, determines that a circumstance specified in [§ 158(d)(2)(A)] exists[,] . . . the

district court . . . *shall* make the certification described in subparagraph (A).") (emphasis added).

The appellant in these consolidated appeals, Federal Energy Regulatory Commission (FERC), has asked me to issue a § 158(d)(2)(B) certification so that it can appeal directly to the Third Circuit four related rulings made by the Bankruptcy Court. D.I. 20-1412-CFC, D.I. 25. I will grant the request.

## I. Background

### A. The Parties

Pursuant to various federal statutes, FERC regulates the interstate transportation of energy (i.e., natural gas, oil, refined petroleum products, and electricity), wholesale power transactions, and certain energy infrastructure, including liquefied natural gas terminals, interstate natural gas pipelines, and hydropower projects. One of those statutes, the Interstate Commerce Act (ICA) specifically delegates to FERC "the duties and powers related to the establishment of a rate or charge for the transportation of oil by pipeline or the valuation of that pipeline" that had been vested with the now-defunct Interstate Commerce Commission. 49 U.S. Code § 60502.

Under federal law, all rates for interstate oil transportation service must be filed with and accepted by FERC. *Enbridge Energy, Ltd. P'ship*, 152 FERC ¶ 61,047 (2015). All terms and conditions of such service are included in tariffs that

2

are also filed with and accepted by FERC as "just and reasonable." *See, e.g., Grand Mesa Pipeline, LLC*, 156 FERC ¶ 61,163, at P14 (2016). Once those terms and conditions are approved by FERC, the duty to comply with them "springs from [FERC's] authority, not from the law of private contracts." *Penn. Water & Power Co. v. Fed. Power Comm'n*, 343 U.S. 414, 422 (1952).

The Supreme Court has long held that "FERC has exclusive authority to determine the reasonableness of wholesale [energy] rates . . . and power allocations that affect wholesale rates." *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 371 (1988). "This principle binds both state and federal courts." *Id.* Accordingly, "[t]he reasonableness of rates and agreements regulated by FERC may not be collaterally attacked in state or federal courts. The only appropriate forum for such a challenge is before [FERC] or a court reviewing [FERC's] order." *Id.*

Appellee/Debtor Extraction Oil & Gas, Inc. (together with certain affiliates, Extraction) is an independent exploration-and-production company that acquires, develops, and produces reserves of oil, natural gas, and natural gas liquids in the Rocky Mountain region. *See* B.D.I. 1023 at 5.

In 2016, Extraction and Grand Mesa Pipeline, LLC entered into two FERC-approved transportation service agreements (TSAs) for the shipment of crude petroleum on Grand Mesa pipelines. *See* B.D.I. 14; B.D.I. 364 at 7-8. Following

3

FERC's declaratory order approving the TSAs as just and reasonable, Grand Mesa invested $650 million in the construction of a pipeline.

**B.     The Chapter 11 Cases and Rejection-Related Rulings**

On June 14, 2020, Extraction voluntarily filed for Chapter 11 bankruptcy. *See* B.D.I. 1. On that same day, Extraction filed with the Bankruptcy Court an omnibus motion seeking authorization to reject 18 contracts to which Extraction was a party. Two of the contracts were Extraction's FERC-approved TSAs with Grand Mesa. Extraction did not seek in advance of its motion FERC approval to reject or otherwise modify the terms of the TSAs.

On August 4, 2020, Grand Mesa filed contemporaneously with the Bankruptcy Court objections to the rejection motion (B.D.I. 363) and a motion for relief from 11 U.S.C. § 362's automatic stay of proceedings against Extraction (B.D.I. 364). In both filings, Grand Mesa argued that rejection of the TSAs could not lawfully occur without obtaining approval from FERC and that, at a minimum, the court was required before ruling on the rejection motion to consider FERC's informed determination on the impact that rejection of the TSAs would have on the public interest.

Grand Mesa explained in its stay-relief motion that it intended to file a petition with FERC to obtain an order regarding whether rejection of the TSAs was consistent with the public interest. And it asked in its motion that the Bankruptcy

4

Court issue an order that either (1) confirmed that the intended FERC petition would not be covered by the automatic stay or (2) granted Grand Mesa relief from the automatic stay to allow it to move forward with a FERC petition. B.D.I. 364. In its objections, Grand Mesa asked the court to defer ruling on the rejection motion "until resolution of Grand Mesa's pending [stay-relief] motion in furtherance of invoking FERC's processes." B.D.I. 363 at 2. It also briefly set forth in its objections why, "[e]ven if considered at this stage . . . the [r]ejection [m]otion fails for multiple reasons." B.D.I. 363 at 2.

Extraction filed an objection to Grand Mesa's stay-relief motion. B.D.I. 507. On September 16, 2020 FERC entered its appearance in the case and the next day it filed a statement in support of Grand Mesa's motion and in response to Extraction's objection. B.D.I. 653. FERC represented in its statement that it "generally agree[d] with the positions taken by Grand Mesa" in support of the stay-relief motion and that it was "writ[ing] separately to emphasize two points." B.D.I. 653 at 1. FERC's first point was that Extraction could not modify or terminate its TSAs with obtaining approval from both FERC and the Bankruptcy Court. B.D.I. 653 at 1–3. FERC did "not dispute that [the Bankruptcy Court] has exclusive authority over the rejection of the Debtor's executory contracts as private obligations," but it insisted that it had "exclusive jurisdiction under the Interstate Commerce Act (ICA) over the modification or abrogation of the public law

5

obligations that those contracts create once [FERC] accepts the contracts as filed rates that carry the force of law." B.D.I. 653 at 1–2.

FERC's second point was that the Bankruptcy Court "should permit Grand Mesa to initiate a proceeding before [FERC] to examine how the public interest would be impacted by the modification or abrogation of the filed[-]rate contracts that [Extraction] seek[s] to reject in this proceeding." B.D.I. 653 at 4. FERC argued that it "must be given the time to conduct a hearing on the record" to "render an opinion on the public interest inquiry at this early stage of the proceeding." B.D.I. 653 at 4. And it stated that it "believe[d]" it could conduct a hearing and render an opinion "in approximately five to six weeks and without causing undue interference or delay in th[e] bankruptcy] proceeding." B.D.I. 653 at 4.

On October 2, 2020, in a bench ruling that it subsequently clarified in part with a letter issued on October 4, 2020, the Bankruptcy Court denied Grand Mesa's stay-relief motion. The letter reads in relevant part:

> As a preliminary matter and as discussed in the Court's bench ruling, Grand Mesa's request for stay relief to obtain FERC's position as to whether rejection of the TSA's during this bankruptcy proceeding is consistent with the public interest and the ICA is based on a false premise. FERC's recent statement in *ETC Tiger Pipeline, LLC* that the "[r]ejection of a Commission-jurisdictional contract in bankruptcy court alters the essential terms and conditions of a contract that is also a filed rate" is incorrect. It does no such thing. The Supreme Court

6

> recently confirmed in *Mission Product Holdings* that "[a]ccording to Section 365(g), 'the rejection of an executory contract[ ] constitutes a breach of such contract'" *Mission Product Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1659 (2019). The effect of a debtor's rejection of a contract under section 365 is that "[i]t gives the counterparty a claim for damages, while leaving intact the rights the counterparty has received under the contract." *Id.*, 139 S. Ct. at 1661.
>
> Thus, Grand Mesa's request for stay relief seeks to institute a proceeding that is completely irrelevant to the issues before this Court. This Court and FERC do not exercise concurrent jurisdiction, rather they exercise parallel exclusive jurisdiction. It would be a violation of this Court's exclusive jurisdiction over the rejection of executory contracts for FERC to purport to decide the issue Grand Mesa wishes to present; just as it would be a violation of FERC's exclusive jurisdiction for this Court to consider or to decide whether abrogation or modification of the filed[-]rate obligations is consistent with the public interest and the ICA. They are two separate issues for two separate decision makers, each of which is exercising its exclusive jurisdiction. Moreover, Grand Mesa and its supporters have not provided any evidence of an independent reason for allowing a proceeding involving [Extraction] to proceed before FERC. Thus, as granting relief from the automatic stay would involve the pursuit of irrelevant litigation in front of FERC and would violate this Court's exclusive jurisdiction over the rejection of executory contracts Grand Mesas has not and cannot demonstrate cause for relief from the automatic stay.

B.D.I. 770 at 2–3. On October 14, 2020, the Bankruptcy Court formally denied the stay-relief motion in a written order. B.D.I. 831. Grand Mesa and FERC filed

7

timely appeals, giving rise to Civ. Nos. 20-1411-CFC and 20-1412-CFC in this Court.

On November 2, 2020, in a bench ruling, the Bankruptcy Court granted Extraction's rejection motion with respect to Grand Mesa's TSAs. D.I. 942. Grand Mesa and FERC appealed that ruling, giving rise to Civ. Nos. 20-1506-CFC and 20-1521-CFC in this Court. On November 10, 2020, the Bankruptcy Court issued a written order confirming its granting of the rejection motion. B.D.I. 1038. On November 20, 2020, FERC filed a timely appeal from that order, giving rise to Civ. No. 20-1564-CFC in this Court.

Thus, as of November 20, 2020, Grand Mesa and FERC had pending before me five appeals from the Bankruptcy Court's related rulings.

### C. Post-Appeal Developments

On December 7, 2020, FERC and Grand Mesa jointly requested that I consolidate the five appeals. D.I. 12. On December 11, 2020, they jointly requested that I provide the necessary certification under 28 U.S.C. § 158(d) for the appeals to be heard directly by the Third Circuit. D.I. 13 (the Original Certification Motion).

On December 23, 2020, the Bankruptcy Court entered an order confirming Extraction's restructuring plan and overruling objections FERC had filed in opposition to the plan. B.D.I. 1509.

On December 28, 2020, in pleadings filed in opposition to the consolidation and certification motions, Extraction stated that it had reached a settlement agreement with Grand Mesa and that it anticipated that Grand Mesa would soon be filing motions to dismiss its appeals. Accordingly, on January 4, 2021, I directed the parties to submit no later than January 11, 2021 a report regarding the status of the pending appeals and motions.

On January 6, 2021, FERC filed a notice of appeal from the Bankruptcy Court's confirmation order, giving rise to Civ. No 21-12-CFC in this Court.

On January 8, 2021, Grand Mesa moved to dismiss its appeals. On January 11, FERC filed a pleading titled "Status Report, Renewed Motion for Certification, and Renewed Motion for Consolidation." D.I. 18. FERC "acknowledge[d]" in its status report that its appeals of the Bankruptcy Court's granting of the rejection motion "may be deemed moot by the settlement between Extraction and Grand Mesa, provided that such settlements do not impermissibly purport to change the filed rates." D.I. 18 at 7. It noted that because the settlement was under seal and it had yet to be a given a copy of it by Extraction, FERC was not in a position to determine whether the settlement affected the filed rates. FERC stated that in any event it intended to purse its appeals of the Bankruptcy Court's denial of the stay-relief motion and the Court's confirmation order and that it intended to consolidate

9

the appeal from the confirmation order with its other appeals and seek certification for a direct appeal of those appeals to the Third Circuit.

On January 13, I issued an Order directing the parties to confer and stating that, "[i]f the parties ... agree" that FERC's fourth appeal (Civ. No. 21-12-CFC) "may be considered within the scope of the relief requested in" the Original Certification Motion, "they shall file a joint status report indicating same." CITE. The Order further stated that, "[i]f the parties do not agree," FERC has 14 days to file "an amended Certification Motion to address the inclusion of Civ. No. 21-12-CFC within the scope of the relief requested." *Id.*

On February 25, 2021, with the consent of the parties, I issued an order consolidating FERC's four appeals for procedural purposes. While the parties agreed that Civ. No. 21-0012-CFC "may be considered within the scope of the relief requested in" the Original Certification Motion, that agreement extended only "insofar as the Commission continues to request certification of a direct appeal to the ... Third Circuit." D.I. 25 at 14. FERC took the position that while both its request for certification and the substantive legal arguments supporting certification apply to Civ. No. 21-0012-CFC, the questions presented in the Original Certification Motion "do not conform to the issue appealed in Civ. No. 21-0012-CFC." *Id.* at 15.

On February 23, 2021, FERC filed an Amended Certification Motion. (D.I. 25). The Amended Certification Motion is fully briefed. (D.I. 25, 26, 27).

## III.  ANALYSIS

FERC argues in its Amended Certification Motion that these appeals "involve issues of major public importance that neither the U.S. Supreme Court nor the Third Circuit has addressed, regarding the interplay between the authority of FERC, which is mandated by Congress to regulate interstate oil pipelines, and the jurisdiction of a bankruptcy court to approve a debtor's rejection of FERC-approved rates, terms and conditions ('Filed Rates') for pipeline shipments." D.I. 25 at 2. Extraction does not dispute this assertion in its response to the Amened Certification Motion. Instead, it makes three arguments in opposition to FERC's § 158(d)(2)(B) request:

> First, FERC did not even have authorization to file the Amended Certification Motion. . . . . Second, FERC's request to certify its fourth appeal [(Civ. No. 21-0012-CFC)] for direct review is untimely, which bars the Third Circuit from exercising jurisdiction over that direct appeal and, at a minimum, creates a significant vehicle problem impeding this Court's certification or the Third Circuit's acceptance of direct appeal. Third, as was the case with its Original Certification Motion, FERC's Amended Certification Motion presents numerous defects that render direct appeal inappropriate.

D.I. 26 at 3. I address these arguments in turn.

11

### A. Whether the Amended Certification Motion is Authorized

Extraction argues that the Amended Certification is "unauthorized" because my January 13 Order directed FERC to file an amended certification motion "[i]f the parties do not agree" that "Civ. No. 21-12-CFC may be considered within the scope of relief requested in the [Original] Certification Motion." According to Extraction, "the parties *agree* that 'Civ. No. 21-12-CFC may be considered within the scope of relief requested in' the Original Certification Motion," D.I. 26 at 4 (emphasis in the original), and thus "it follows that the Amended Certification Motion is unauthorized," D.I. 26 at 5. The January 13 Order, however, did not preclude FERC from filing the Amended Certification Motion; the Order simply directed FERC to file an amended certification request if a certain condition existed—i.e., if the parties did not agree that Civ. No. 21-12-CFC could be considered within the scope of relief requested in the Original Certification Motion. Thus, even if the parties agreed that Civ. No. 21-12-CFC may be considered within the scope of relief requested in the Original Certification Motion, it does not follow that the Amended Certification Motion is unauthorized.

### B. Whether the Certification Request for FERC's Fourth Appeal is Untimely

Extraction argues that FERC's request for certification of its fourth appeal (Civ. No. 21-0012-CFC) from the Confirmation Order, which the Bankruptcy Court entered on December 23, 2020, is not timely. Under both § 158 and Federal

12

Rule of Bankruptcy Procedure 8006(f)(1), FERC was required to submit any request for a direct appeal from the Confirmation Order within 60 days of its entry. *See* 28 U.S.C. § 158(d)(2)(E) ("Any request [to a district court] for certification shall be made not later than 60 days after the entry of the judgment, order, or decree."); Fed. R. Bankr. P. 8006(f)(1) ("A request by a party for certification that a circumstance specified in 28 U.S.C. §158(d)(2)(A)(i)-(iii) applies ... must be filed with the clerk of the court where the matter is pending within 60 days after the entry of the judgment, order, or decree."). The 60-day deadline with respect to the Confirmation Order expired on February 22, 2021, and FERC filed the Amended Certification Motion on February 23, 2021. Extraction argues that because the 60-day deadline is jurisdictional, FERC's untimeliness is fatal to its efforts to seek a direct appeal in Civ. No. 21-12-CFC. *See* D.I. 26 at 8-10 (citing *In re Holloway*, 425 F. App'x 354, 355 (5th Cir. 2011)).

Extraction's argument, however, overlooks that FERC filed its renewed motion for certification of direct appeal on January 11, 2021, which included its request for certification of direct appeal of its Confirmation Order appeal at Civ. No. 21-12-CFC, along with its other pending appeals. *See* Civ. No. 20-1412-CFC, D.I. 18; Civ. No. 20-1506-CFC, D.I. 16; Civ. No. 20-1564-CFC, D.I. 18; Civ. No. 21-12-CFC, D.I. 10. FERC's request for certification is therefore timely with respect to all four of its appeals.

13

### C. Whether the Amended Certification Motion is Defective

Extraction argues that FERC's certification request is "defective" because its "appeals implicate numerous aspects that make them exceptionally unattractive candidates for direct review by the Third Circuit." D.I. 26 at 11. In support of this argument, Extraction identifies numerous reasons why the Third Circuit might, given the discretion it is afforded under § 158(d), decide not to exercise jurisdiction over these appeals. Extraction argues, for example, that the questions FERC says need to be resolved to decide these appeals "contain[ ] multiple subsidiary questions" and are "confusing." *Id.* at 11. And it contends that the fact that FERC's first appeal, Civ. No. 20-1412-CFC, is taken from an oral ruling of the Bankruptcy Court counsels against certification. In Extraction's words: "The absence of a written decision confirms that this Court should provide such an opinion before the Third Circuit weighs in." *Id.* at 13.

To be sure, these arguments and the other "defects" Extraction identifies may bear on whether the court of appeals should exercise its discretion to hear FERC's appeals; but they have no bearing on the question of whether the circumstances set forth in § 158(d)(2)(A) exist. On that question, Extraction's briefing is silent. Indeed, Extraction never disputes in its responses to the Original and Amended Certification Motions that the Bankruptcy Court's rulings from which these appeals are taken involve both questions of law as to which there is no

14

controlling decision of the Third Circuit or of the Supreme Court and matters of public importance.

### D.     Three of § 158(d)(2)(A)'s Circumstances Exist

My own review of the filings that led to the Bankruptcy Court's rulings and the rulings themselves confirms to my satisfaction that the rulings raise fundamental legal questions of public importance that lie at the intersection of federal bankruptcy law and federal energy law. The overriding question raised by these appeals is how a bankruptcy court should proceed when a debtor in bankruptcy moves to reject a contract that has been approved by FERC. This question implicates the bankruptcy court's authority to reject executory contracts and FERC's authority over the abrogation or modification of contracts it has approved. Neither the Third Circuit nor the Supreme Court has addressed this overriding question or the related subsidiary questions identified by FERC that I would have to resolve to adjudicate these appeals.

I also find that a direct appeal from the Bankruptcy Court's rulings to the court of appeals could materially advance the progress of these cases. Any ruling I make will almost certainly be appealed to the Third Circuit. The numerous pending appeals "leave little doubt that appellate review by the Third Circuit is inevitable" and '[g]iven this reality, having such review sooner rather than later may well result in materially advancing the progress of these cases." *In re: Nortel*

15

*Networks Inc.*, Nos. 15-196-LPS, 15-197-LPS, 2016 WL 2899225, at *5 (D. Del. May 17, 2016).

## V.  CONCLUSION

Because FERC has established that one or more of the circumstances set forth in § 158(d)(2)(A) is present, I will grant its Amended Certification Motion. I will stay merits briefing on the remaining arguments raised in the appeals pending a decision from the Third Circuit.

The Court will issue an Order consistent with this Memorandum Opinion.